GRAND TRUNK WESTERN RY. CO. v. LINDSAY.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912. On Rehearing, November 25, 1912.)

No. 1,826.

1. MASTER AND SERVANT (§ 258*)—ACTION FOR INJURY TO SERVANT—SUFFICIENCY OF DECLARATION.

Where the declaration in an action by a switchman against a railroad company to recover for an injury caused by the moving of a train while plaintiff was between two cars making a coupling contained allegations with respect to the defective coupler, such as to bring the case within the provisions of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), and alleged that defendant was engaged in operating the train in interstate commerce, and that plaintiff was employed by defendant in such operation, it will be inferred, after

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

verdict, that the train was moved by defendant, although not so alleged in terms.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836; Dec. Dig. § 258.*]

**2. APPEAL AND ERROR (§ 1068*)—REVIEW—HARMLESS ERROR.**

In an action by a servant for a personal injury, the refusal of an instruction as to the effect of contributory negligence was not error prejudicial to defendant, where the jury found specially, on evidence which justified such finding, that plaintiff was not chargeable with negligence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

**3. TRIAL (§ 349*)—SPECIAL FINDINGS BY JURY—DISCRETION OF COURT.**

It is within the discretion of a federal court to submit special questions to a jury in aid of a general verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 823–827; Dec. Dig. § 349.*]

**4. TRIAL (§ 260*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.**

The refusal of a requested instruction as to the weight to be given to the testimony of a particular witness *held* not error, in view of a general instruction given that the jury were the sole judges of the credibility of witnesses and the weight to be given to their testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**5. DAMAGES (§ 132*)—PERSONAL INJURY—EXCESSIVE AWARD.**

An award of $13,000 damages to a switchman, 23 years old, who was earning from $110 to $115 per month, for an injury which necessitated the amputation of his right arm near the shoulder, *held* not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

**6. MASTER AND SERVANT (§ 296*)—ACTION FOR INJURY TO SERVANT—INSTRUCTIONS—EMPLOYERS' LIABILITY ACT.**

In an action by a switchman against an interstate railroad company for a personal injury, based on Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), and Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), a requested instruction that, if it was found that plaintiff did a certain act, such act was the proximate cause of the injury, and he could not recover, was properly refused, as contrary to section 3 of the latter act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

**7. EVIDENCE (§ 514*) — EXPERT TESTIMONY — SUBJECT-MATTER — AUTOMATIC COUPLERS.**

Automatic car couplers, like other railroad machines and appliances, are not to be supposed to come so fully within the knowledge of average jurymen that experts may not properly be allowed to testify respecting their nature, operation, and normal condition, and it was not error to permit a witness, who had worked for several years as a brakeman, to testify that such a coupler, when in ordinary repair, could be closed with the foot, as well as the hand.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2319–2323; Dec. Dig. § 514.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action at law by George Lindsay against the Grand Trunk Western Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Defendant in error, herein called plaintiff, was a switchman on defendant's railroad. On the night of September 21, 1908, he was severely injured by having his hand and arm caught and crushed while trying to lock the coupler between two freight cars; amputation of the arm near the shoulder being found necessary. Suit was brought February 11, 1909, in the state court, and removed to the Circuit Court by reason of diverse citizenship.

In the declaration are two counts, the first based upon both the federal Safety Appliance and Employers' Liability statutes, and the second on the Liability Act alone. In both counts it is alleged that the railroad and train were interstate, defendant then and there a common carrier in interstate commerce, plaintiff then and there employed in such interstate commerce, and that by reason of negligence of defendant, and without negligence on his part, plaintiff was injured. The first count claims a defective coupler as an additional ground of liability, under the automatic appliance statute, and alleges that by reason of such defective condition plaintiff was obliged to go between the cars to adjust the coupler, and while so engaged the cars were negligently pushed together, resulting in the injury.

The evidence clearly showed the coupler defective. After repeated trials it would not work. It was tried by a number of workmen and the chief car inspector, and the lock was finally taken out and another put in. The old lock was not produced at the trial.

It was the plaintiff's duty to couple the car having the defective coupler to another. In order to do this it was necessary for him to go between the cars. Before going between the cars plaintiff gave the conductor and his fellow switchman and the engineer a hard stop and stand signal, which, in railroad usage, meant that he was going between the cars, and that they should not be moved until he gave another signal. This signal was received and answered by the conductor and plaintiff's fellow switchman. While plaintiff was between the cars and endeavoring to adjust the defective coupler so it could be coupled, the cars were, without notice or warning to him, suddenly shoved together, and his right arm was thereby so crushed that it became necessary to amputate it within three inches of the shoulder. This movement of the cars, the evidence tends to show, was due to the engineer's supposition that a "come ahead" signal had been given.

No "come ahead" signal was given by the plaintiff, but the foreman of the switching crew got such a signal from some one and gave it to the engineer. The foreman in the darkness could not tell who gave it, though he knew plaintiff was between the cars trying to couple them, and the signal came from that place. There was a car oiler with a lantern near plaintiff on the same side of the train, who testified that neither he nor plaintiff gave a "come ahead" signal, though the oiler says he made movements of his lantern, while at work, which may have been mistaken by the foreman for a come on signal. There is no contradictory testimony, except an affidavit as to what the testimony of the engineer would have been, if called, used by agreement by reason of his absence at the trial. This affidavit states that "plaintiff gave a signal to Conroy to come ahead, and Conroy repeated it to him as such engineer, and in obedience to such signals he began shoving said cars together." It is, however, perfectly evident that in the darkness the engineer could not see who gave the signal; his statement that plaintiff gave it being clearly not within his knowledge or observation. In the nature of things he could not know.

The jury found a general verdict for plaintiff, and also answered in the affirmative the following special questions:

"Do you find from the evidence that the defendant was guilty of a violation of the Safety Appliance Act, as charged in the first count of the declaration?

"If you find that the defendant was guilty of a violation of the Safety Appliance Act, as charged, do you find from the evidence that such violation was a proximate or concurrent cause of the plaintiff's injury?

"Considering all the evidence, including the plaintiff's conduct, both in going between and while between the cars, do you find that he was in the exercise of ordinary care for his own safety?"

By the Safety Appliance Act of March 2, 1893, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), 6 Fed. Stat. Ann. 752, amended by Act May 30, 1908, 35 Stat. 476 (U. S. Comp. St. Supp. 1911, p. 1326), Fed. Stat. Ann. Supp. 588, and by Act April 14, 1910, 36 Stat. 298 (U. S. Comp. St. Supp. 1911, p. 1327), it is provided that it shall be unlawful for a common carrier engaged in inter-state commerce to haul or permit to be hauled on its line any car used in moving interstate traffic not equipped with complete couplers coupling auto-matically by impact, and which can be coupled without the necessity of men going between the ends of the cars; also that employés do not assume the risk of the prohibited use of any such car, although continuing in their em-ployment after the unlawful use is brought to their knowledge.

The following provisions of the Railroad Employers' Liability statute of April 22, 1908, are material:

Section 1: "Every common carrier by railroad, while engaging in com-merce between any of the several states or territories * * * shall be lia-ble in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * resulting * * * by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances * * * or other equipment."

Section 3: "* * * The fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé: Provided, that no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé."

Section 4 abolishes assumption of risk in case of the violation of such a statute as is mentioned in section 3. Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), Fed. Stat. Ann. Supp. 584, 585.

Assignments of error:

"(1) The declaration does not state a cause of action.

"(2) The court erred in admitting in evidence the following: 'Q. In the ordinary working of these couplers when they are in ordinary repair, can a man shove them in with his heel as well as his hand? A. Yes.' The question was duly objected to, on the ground that the witness was not qualified, and as calling for a conclusion.

"(3) The court erred in not giving the following requested instruction: 'The court instructs the jury that if you believe from the evidence that the plain-tiff gave a "come ahead" signal to the switchman and engineer, and then went between the cars, and in consequence thereof was injured, then the giv-ing of the "come ahead" signal by the plaintiff was the proximate cause of the injury, the defect in the coupler being a remote cause, then the plaintiff is not entitled to recover.' Also in giving in place thereof the following: 'You are further instructed that if you believe from the evidence, by a pre-ponderance of the evidence, that the plaintiff gave a "come ahead" signal to the switchman or engineer—one or both—and after that went between the cars and was injured, then you have a right to consider whether the giving of the "come ahead" signal by the plaintiff was the proximate cause of the injury, as distinguished from the condition of the coupler. And if you find that, under the circumstances, the "come ahead" signal was the proximate cause for the injury, then your verdict must be for the defendant.'

"(4) The court erred in refusing the following requested instruction: 'The jury are instructed that if you believe from the evidence that plaintiff was guilty of negligence, which contributed to his injury, then he cannot recover.' Also in giving in place thereof the following: 'If after he started to go be-tween the cars he has done something which was carelessly done, or which you can see from a preponderance of the evidence contributed proximately to the accident, then he cannot recover. If there be contributory negligence at

all, it depends not upon his assuming the risk under the circumstances in evidence in this case, but upon the care with which he acted while in the performance of the work which he assumed.'

"(5) Plaintiff was guilty of contributory negligence which bars his right to a recovery.

"(6) The court erred in requiring the jury to make the special findings above stated.

"(7) The court erred in refusing the following instruction: 'The court instructs the jury that the testimony of defendant's car inspector, Hanses, that he did inspect the car in question and did not discover any defect in the coupler, that his testimony should be given the same consideration, other things being equal between the witnesses, as positive testimony.'

"(8) The damages are excessive."

George W. Kretzinger and L. L. Smith, both of Chicago, Ill., for plaintiff in error.

James C. McShane, of Chicago, Ill., for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). [1] 1. The declaration is sufficient, if it brings the case within the provisions of the Safety Appliance and Employers' Liability Acts above stated and otherwise states a cause of action. It pleads, in both counts, that defendant was an interstate carrier, engaged in interstate commerce at the time of the injury, and that plaintiff was employed in such commerce. In addition it is stated in the first count that the automatic coupler, owing to its improper construction and defective and inoperative condition of repair, could not be coupled from the side of the car without the necessity of switchmen going between the end of the car having such coupler and the car or cars to which it was to be coupled. Other allegations are made showing how plaintiff was injured by reason of such defects, and that said cars were shoved together, without the express allegation that this was done by defendant. It is also stated that plaintiff was then and there employed *by defendant* as a switchman to work and switch with a certain engine and certain cars, which it was then and there operating upon its railroad in its business. This sufficiently shows that defendant shoved the cars together, by which the injury occurred. The question was not raised until after verdict, by a motion in arrest of judgment. Under such circumstances it may be inferred, if necessary, that defendant moved the cars. Sargeant v. Baublis, 215 Ill. 430, 74 N. E. 455; American Bridge Co. v. Peden, 129 Fed. 1004, 64 C. C. A. 581. And the declaration is in other respects good, and brings the case within the statutes referred to.

2. The question was asked the witness whether a coupler in ordinary repair could be closed with the foot as well as the hand. It was error to receive the testimony, because calling for a conclusion and invading the province of the jury; but in view of the uncontradicted testimony as to the condition of the coupler, clearly showing beyond any controversy that the coupler was not in a state of ordinary repair, the error was not prejudicial.

3. Defendant asked an instruction, based upon the testimony already stated in relation to the "come ahead" signal, to the effect that if it was given by plaintiff he could not recover. But it has been seen that the evidence shows the plaintiff did not give any such signal. It was not error, therefore, to refuse the instruction. The instruction actually given left the question to the jury; but defendant was not injured, because the proof shows no such signal by plaintiff.

[2] 4. Defendant asked an instruction submitting generally the question of contributory negligence. This was refused, and the jury charged that if plaintiff did something careless after starting to go between the cars, which contributed proximately to his injury, he could not recover. This was based upon Schlemmer v. Buffalo R. & P. R. Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, Id., 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596, Delk v. St. Louis & S. R. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590, and Chicago, R. I. & P. R. Co. v. Brown, 185 Fed. 80, 107 C. C. A. 300, in this court. Plaintiff did not assume the risk caused by the defective coupler. Merely going between the cars, therefore, was not negligence, if he used ordinary care in doing so. If he went in with care, and after he got there still continued to act with ordinary prudence, the jury were authorized to find he was not chargeable with contributory negligence, as they did; and their conclusion is fully justified by the record. Indeed, under the Employers' Liability statute, even contributory negligence would not defeat recovery, only lessen damages; but the jury having found no want of care by plaintiff, and the record sustaining their conclusion, this provision of the liability statute is not involved.

5. This assignment involves the same question, whether plaintiff was negligent. The objection confused assumption of risk and contributory negligence. Whether plaintiff was negligent was fairly submitted to the jury, and decided for him. He testifies what he did after going between the cars, when he was justified in assuming that his "hard and fast" signal would be respected by the engineer. He gave no other signal, but by mistake the cars were pushed together and his arm crushed. It was negligence per se, for defendant to use the car having the defective coupler, even though the shoving of the cars together was accidental. St. Louis, I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Chicago, B. & Q. R. Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582. On the other hand, it was not negligent for plaintiff to attempt to use the defective coupler, because the statute expressly provides that he should not assume that risk by continuing to work after he knew the appliance was defective. The evidence tends to show plaintiff's diligence, not negligence, and the jury have decided in his favor.

[3] 6. This objection is that it was error for the court, in addition to a general verdict, to interrogate the jury whether defendant violated the Safety Appliance Act, whether this was a proximate cause of the injury, and whether plaintiff used ordinary care for his own safety. Questions almost identical were submitted, by request of

the same counsel who asked them in this case, in Chicago, R. I. & P. R. Co. v. Brown, supra, where this court affirmed the judgment. The practice of submitting special questions in aid of a general verdict is an exceedingly convenient one, and is of long standing. In Walker v. New Mexico & Southern Pacific Railroad Co., 165 U. S. 593, at page 597, 17 Sup. Ct. 421, at page 422 (41 L. Ed. 837), Justice Brewer said:

"It was also a common practice, when no special verdict was demanded, and when only a general verdict was returned, to interrogate the jury upon special matters of fact. Whether or no a jury was compelled to answer such interrogations, or whether, if it refused or failed to answer, the general verdict would stand, or not, may be questioned. Mayor, etc., v. Clark, 3 Ad. & Ell. 506. But the right to propound such interrogatories was undoubted and often recognized. Walker v. Bailey, 65 Me. 354; Spurr v. Shelburne, 131 Mass. 429. In the latter case the court said (page 430): 'It is within the discretion of the presiding justice to put inquiries to the jury as to the grounds upon which they found their verdict, and the answers of the foreman, assented to by his fellows, may be made a part of the record, and will have the effect of special findings of the facts stated by him. And no exception lies to the exercise of this discretion. Dorr v. Fenno, 12 Pick. [Mass.] 521; Spoor v. Spooner, 12 Metc. [Mass.] 281; Mair v. Bassett, 117 Mass. 356: Lawler v. Earle, 5 Allen, 22.' So that the putting of special interrogatories to a jury and asking for specific responses thereto in addition to a general verdict is not a thing unknown to the common law, and has been recognized independently of any statute."

In Rockefeller v. Wedge, 149 Fed. 130, at page 132, 79 C. C. A. 26, at page 28, the court says:

"The practice of calling on jurors to specialize their verdict in the way that was done is furthermore deprecated, and the right of the court to do so is challenged. But the right to interrogate a jury, and to act upon their findings, is directly sustained in Walker v. Southern Pacific R. R., 165 U. S. 593, 597, 17 Sup. Ct. 421, 41 L. Ed. 837, and City of Elizabeth v. Fitzgerald, 114 Fed. 547, 52 C. C. A. 321, and does not need to be vindicated here. And, far from being open to the criticism made of it, if it were oftener resorted to, it would save not a few mistrials; many rulings to which objection could otherwise be justly made being eliminated and rendered harmless. Clementson on Special Verdicts, 95, 286; 4 Mich. Law, Rev. 493."

And in City of Elizabeth v. Fitzgerald, supra, the trial court, upon a motion by defendant to direct a verdict, submitted special questions to the jury, not covering all of the issues, and, upon those questions being answered, granted the motion to direct. Not only is the practice beneficial, but it is difficult to see how it could properly be held erroneous, in any case; defendant suffering no injury. The case of Daube v. P. & R. Coal Co., 77 Fed. 713, 23 C. C. A. 420, opinion by Judge Woods, is not in point, as that was a special verdict, which did not cover the whole case, and no general verdict.

[4] 7. This assignment covers a requested instruction as to the testimony of the car inspector, by whom the car in question was inspected, but who had no recollection of the particular car, relying wholly on his record book. By the requested instruction his testimony was to be given the same consideration, other things being equal between the witnesses, as positive testimony. While this particular instruction was refused, the court gave the ordinary one, substantially in this language: The greater weight of evidence does not depend

upon the number of witnesses testifying to the existence of a given fact. The jury are the sole judges of credibility, and the weight which should be given to their testimony, and might consider their interest, relation, demeanor, frankness, or candor (or the contrary), corroboration, or the reverse; and, all things considered, the jury should determine where the greater weight of evidence rests. This instruction as given was particularly applicable to the question of the coupler's condition, because so large a number testified to its faulty operation, as against the statement of the car inspector, who says he found nothing wrong with it. Under these circumstances, we think the point presented by the request was sufficiently covered by the general instruction.

[5] 8. The last assignment raises the question whether $13,000 was an excessive recovery for the injury. Plaintiff was 23 years old at the time of the accident. As a result of his injuries his right arm was amputated, leaving less than three inches of a stump at the shoulder. As a switchman he earned from $110 to $115 a month. It was a year after the accident before he was able to work. His first work after the accident was keeping an account of the number of boxes turned out in a box factory, at which work he earned $2 per day. After leaving the box factory he has ever since worked as a switch tender, earning $55 a month. If he had not been injured, he might have worked up in the railroad service. As it is, he is filling one of the most ordinary positions in such service, with little or no chance of promotion. Under these conditions, the verdict should not be held excessive.

The judgment of the Circuit Court is affirmed.

SEAMAN, Circuit Judge. [6] I concur in the conclusion for affirmance and in the several rulings of the opinion, excepting one in reference to evidence of a "come ahead" signal given by the plaintiff below. Whatever may be deemed the preponderance of evidence thereupon, I believe the testimony of two witnesses—the engineer and the foreman of the switching crew—cannot, as matter of law, be rejected as testimony tending to prove that the signal was so given. Nevertheless, I am of opinion that the requested instruction, mentioned in the third assignment of error, was rightly denied, as it was inconsistent with the provisions of the act of April 22, 1908, referred to in the opinion. If the signal was given by the plaintiff, his action was negligence, contributing, with the defective coupler, in causing the injury; and no instruction of law was authorized that one or the other contributing negligence was a proximate cause.

## On Rehearing.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges..

PER CURIAM. In the petition for rehearing defendant contends that three errors were committed in the opinion heretofore delivered by this court through SANBORN, District Judge.

[7] 1. In holding that, while the trial court erred in permitting wit-

ness Miller to testify that an automatic coupler in ordinary repair can be closed with the foot as well as the hand, nevertheless the error was not prejudicial, because the uncontradicted evidence showed that the coupler in question was out of repair. (Paragraph 2 of the opinion.)

On re-examination we find that the evidence to prove that the coupler was out of repair was not entirely uncontradicted. So we inquire anew whether the testimony was admissible. Objections were that the answer gave only an opinion or conclusion, and that the witness was not qualified as an expert. Miller had worked for several years as a brakeman, and coupling was a large part of his work. We think he was sufficiently qualified. He had already testified that he had put his "heel against the knuckle trying to push it in, and it would not go." His testimony (objected to) that couplers in ordinary repair can be closed with the foot as well as the hand might be deemed a matter of fact learned from observation and experience; but, if it be taken as a matter of opinion, we consider the testimony admissible. Automatic couplers, like buffers, switches, frogs, cattle guards, spark arresters, and other railroad machines and appliances, are not to be supposed to come so fully within the knowledge of average jurymen that experts may not properly be allowed to testify respecting their nature, operation, and normal condition. Gila Valley R. Co. v. Lyon, 203 U. S. 465, 27 Sup. Ct. 145, 51 L. Ed. 276; Troxell v. Delaware, L. & W. R. Co. (C. C.) 180 Fed. 871; Baltimore & P. R. Co. v. Elliott, 9 App. D. C. 341; Schroeder v. Chicago & N. W. R. Co., 128 Iowa, 365, 103 N. W. 985; Johnson v. Detroit & M. R. Co., 135 Mich. 353, 97 N. W. 760; Buckalew v. Quincy, O. & K. R. Co., 107 Mo. App. 575, 81 S. W. 1176; Jones v. Shaw, 16 Tex. Civ. App. 290, 41 S. W. 690; San Antonio & A. P. R. Co. v. Waller, 27 Tex. Civ. App. 44, 65 S. W. 210.

2. In holding that there was no evidence on which to base defendant's requested instruction that if plaintiff gave a "come ahead" signal to the engineer, and then went between the cars and in consequence thereof was injured, then the giving of the "come ahead" signal was the proximate cause and plaintiff could not recover. (Paragraph 3 of the opinion.)

On re-examination we agree with the view expressed by Judge SEAMAN in his concurring opinion that there was conflicting evidence respecting the giving of the "come ahead" signal, but that, even so, the requested instruction was properly refused. If, under the Employers' Liability Act, plaintiff's negligence, contributing with defendant's negligence to the production of the injury, does not defeat the cause of action, but only lessens the damages, and if the cause of action is established by showing that the injury resulted "in whole or in part" from defendant's negligence, the statute would be nullified by calling plaintiff's act the proximate cause, and then defeating him, when he could not be defeated by calling his act contributory negligence. For his act was the same act, by whatever name it be called. It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act.

3. In overruling the fourth assignment of error. (Paragraph 4 of the opinion.)

For the reasons given in the opinion, we believe that the trial court committed no error against defendant in giving the challenged instruction.

The judgment is reaffirmed.