ATLANTIC COAST LINE RAILROAD COMPANY *v.* ANDER-
SON, executrix.
ANDERSON, executrix, *v.* ATLANTIC COAST LINE RAIL-
ROAD COMPANY.

Nos. 15432, 15433.   MAY 9, 1946.   REHEARING DENIED JUNE 6, 1946.

*Bennet, Peacock & Perry,* for Atlantic Coast Line R. Co.
*Arnold, Gambrell & Arnold,* and *Ira Carlisle,* for Anderson.

WYATT, J. (After stating the foregoing .facts.) ■ In case No. 15432, exception is taken to the following ruling of the Court of Appeals: "The conductor is charged with negligence in not taking steps to stop the train when he realized that the engineer had failed to give the signal indicating a meeting or waiting point, and in failing to put on the emergency brakes to stop the train, and in failing to warn the engineer over the signal system that a meeting point was about to be reached. We think that the alleged negligence of the conductor in failing to take immediate action to

stop the train as required by a rule of the company, and his failure to apply the emergency brakes, if necessary, in stopping the train, was properly pleadable against the company although most of the decisions cited above seem to hold otherwise. We base this ruling on the allegations in the petition that the conductor was in charge of the train, and that it was within his power to stop the train at any time by putting on the air brakes, irrespective of any act or omission on the part of the engineer. . . We think that there is a difference between the positive duty enjoined upon the conductor to take action to stop the train, using the emergency brakes if necessary for this purpose, and whatever duty may have rested upon him to communicate with the engineer over the signal system. Stopping the train by applying the brakes was within the power of the conductor without regard to the engineer, whereas the failure to warn the engineer could have had no reasonable causal connection with the collision."

In this case, the rights and obligations of the parties depend upon the Federal Employers' Liability Act and applicable principles of common law as interpreted and applied by the Federal courts. Chesapeake & Ohio Railway Co. *v.* Kuhn, 284 U. S. 44 (52 Sup. Ct. 45, 76 L. ed. 157), and cit. The act provides that the employer shall be liable to an employee for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees" of the railroad, and "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U. S. C. A., §§ 51, 53.

It is urged that the allegations of the petition show that the sole and proximate cause of the collision was the negligence of the engineer of train No. 12 in disobeying a rule of the company and failing to stop his train, and that no recovery can be had on the alleged negligence of the conductor, his failure to stop the train not being a contributing or proximate cause of the engineer's death.

Simply stated, the question for decision is whether, under the pleadings, the engineer's negligence was the sole and proximate cause of the collision. On this question the Court of Appeals cited and discussed the following decisions from the Federal courts:

Davis *v.* Kennedy, 266 U. S. 147 (45 Sup. Ct. 33, 69 L. ed. 212);
Frese *v.* Chicago B. & Q. R. Co., 263 U. S. 1 (44 Sup. Ct. 1, 68 L.
ed. 131); Unadilla Valley Ry. Co. *v.* Caldine, 278 U. S. 139 (49
Sup. Ct. 91, 73 L. ed. 224); Southern Ry. Co. *v.* Youngblood, 286
U. S. 313 (52 Sup. Ct. 518, 76 L. ed. 1124); Southern Ry. Co. *v.*
Dantzler, 286 U. S. 318 (52 Sup. Ct. 520, 76 L. ed. 1127); Great
Northern Ry. Co. *v.* Wiles, 240 U. S. 444 (36 Sup. Ct. 406, 60
L. ed. 732); Bradley *v.* Northern Pacific R. Co., 44 Fed. 2d, 683
(72 A. L. R. 1341); Unadilla Valley R. Co. *v.* Dibble, 31 Fed. 2d,
239 (certiorari denied, 280 U. S. 565, 50 Sup. Ct. 25, 74 L. ed.
618); Yadkin R. Co. *v.* Sigmon, 267 U. S. 577 (45 Sup. Ct. 230, 69
L. ed. 796).

In the Kennedy case, an engineer was killed when he disobeyed
a rule of the company requiring him to ascertain positively whether
another train had passed before proceeding by a station. It was
contended that other members of the crew were negligent in not
keeping a lookout for the other train, but a recovery was denied,
the court holding that "It was the personal duty of the engineer
positively to ascertain whether the other train had passed. His
duty was primary, as he had physical control of No. 4, and was
managing its course. It seems to us a perversion of the statute
to allow his representative to recover for an injury directly due to
his failure to act as required on the ground that possibly it might
have been prevented if those in secondary relation to the move-
ment had done more." The Frese case is somewhat similar on its
facts. There an engineer, after stopping his train, moved it for-
ward across another track without ascertaining whether the way
was clear. The court held: "It would be a perversion of the
Federal Employers' Liability Act . . to hold that he (the engi-
neer) could recover for an injury primarily due to his failure to
act as required (by statute), on the ground that possibly the injury
might have been prevented if his subordinate had done more."

In the Caldine case, the court held that no recovery could be
had where a conductor, whose duty it was to hold a train at a
station, disobeyed the rule and ordered the motorman to proceed
with the train. It was held that the disobedience of the rule of
the company was brought about by the conductor's own act, and
the company could not be held liable for the alleged negligence of
the engineer in obeying the conductor's own commands; also that

the failure of a station agent to warn the conductor was not such negligence as would permit a recovery, because "a failure to stop a man from doing what he knows that he ought not to do hardly can be called a cause of his act." The Youngblood and Dantzler cases contain similar rulings.

In the Wiles case, a rear brakeman, after his train had stopped because of the pulling out of a drawbar, failed to perform his duty of going back to warn approaching trains, but remained in his caboose, where he was killed when his train was struck from the rear by another train. The court held that his negligence proximately caused the accident and no recovery could be had. However, as later stated by the United States Supreme Court in another decision, no negligence of his employer connected with the accident was shown. In the Bradley case, where an engineer was killed, it was claimed that the railroad was negligent because the conductor, the fireman, and the brakeman failed to remind the engineer of a meet-order, as required by the rules of the company. The court held that the decedent had a plain duty to perform, and the signal of the conductor would have only given him another motive for obeying an order which he was already bound to obey.

In the Dibble case, in which the Supreme Court denied certiorari (280 U. S. 565), it was held that there could be no recovery where an engineer, in violation of his orders, moved his train forward when signalled so to do by the conductor. The Sigmon case is similar.

Although, upon casual reflection, it would appear that these cases are controlling on the question here involved, we think that we shall presently be able to show that none of such cases controls the present case, and that other adjudications of the Federal courts are more nearly in point and controlling in principle.

In Union Pacific Railroad Co. v. Hadley, 246 U. S. 330 (38 Sup. Ct. 318, 62 L. ed. 751), a brakeman was killed when his train, after stopping on the main line, was run into from the rear by another train. It was the duty of the brakeman to have gone back to warn the following train by lights, torpedoes, etc. The brakeman failed to perform this duty and remained in the caboose of his train, where he was killed. In seeking a recovery for his death, it was charged that the railroad company was negligent by virtue of the failure of the employees on the train approaching from the

rear to observe signal lights on a block system and the negligence of a dispatcher in sending the two trains out in a snowstorm. In holding that there could be a recovery, the Supreme Court said: "But it is said that in any view of the defendant's conduct the only proximate cause of Cradit's (the brakeman's) death was his own neglect of duty. But if the railroad company was negligent, it was negligent at the very moment of its final act. It ran one train into another when if it had done its duty neither train would have been at that place. Its conduct was as near to the result as that of Cradit. We do not mean that the negligence of Cradit was not contributory. We must look at the situation as a practical unit rather than inquire into a purely logical priority. But even if Cradit's negligence should be deemed the logical last, it would be emptying the statute of its meaning to say that his death did not 'result in part from the negligence of any of the employees' of the road. . . In Great Northern Ry. Co. v. Wiles, 240 U. S. 444, it appeared that the only negligence connected with the death was that of the brakeman who was killed."

In Spokane & Inland Empire R. Co. v. Campbell, 241 U. S. 497 (36 Sup. Ct. 683, 60 L. ed. 1125), an engineer was injured when he violated orders, left a station where he was supposed to remain until another train with the right-of-way had passed, and proceeded to run his train down a main line. He had gone some distance when he discovered the other train approaching on the same track from the opposite direction. He applied the train's air brakes, which held only momentarily, and a collision ensued. There was evidence tending to show that, had the brakes functioned properly, the collision would have been avoided. It was urged that the engineer could not recover for his injury because his own negligence in violating orders was the sole and proximate cause of the collision. The United States Supreme Court, in holding that there could be a recovery, based on the negligence of the company in furnishing defective brakes, held: "Upon the whole case, we have no difficulty in sustaining his right of action under the Employers' Liability Act. That act (§ 1; 35 Stat. 65) imposes a liability for injury to an employee 'resulting *in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, . . or other equip-

ment.' As was held in San Antonio & Arkansas Pass Ry. *v.* Wagner, decided June 5, 1916, ante, p. 476, a violation of the Safety Appliance Act is 'negligence' within the meaning of the Liability Act. And by the proviso to § 3 of the latter act, no employee injured or killed shall be held to have been guilty of contributory negligence in any case where a violation of the Safety Appliance Act 'contributed to the injury or death of such employee.' It is too plain for argument that under this legislation the violation of the Safety Appliance Act need not be the sole efficient cause, in order that an action may lie. The Circuit Court of Appeals (217 Fed. Rep. 524) held that the element of proximate cause is eliminated where concurring acts of the employer and employee contribute to the injury or death of the employee. We agree with this, except that we find it unnecessary to say the effect of the statute is wholly to eliminate the question of proximate cause. But where, as in this case, plaintiff's contributory negligence and defendant's violation of a provision of the Safety Appliance Act are concurring proximate causes, it is plain that the Employers' Liability Act requires the former to be disregarded."

The ruling of the Supreme Court was necessarily, (1) that the engineer's negligence was not the sole and proximate cause of the collision, and (2) that the railroad's negligence contributed to the accident. Under this ruling, the engineer was allowed a full recovery, since the negligence of the railroad arose by virtue of the violation of the Safety Appliance Act, which requires that the negligence of the injured employee in such cases be disregarded. The ruling is in principle controlling in this case; but here, where concurring acts of negligence contributing to the collision are alleged, the recovery, if any, as determined by a jury, must be diminished in proportion to the amount of negligence attributable to the engineer.

In Virginian Ry. Co. *v.* Linkouse, 230 Fed. 88, the facts are similar to the facts in the present case. An engineer failed to blow a meet-order signal and failed to stop his train as required by a rule of the company, and a collision occurred. The conductor under the rule was required to take steps to stop the train on the failure of the engineer to give the required signal. The engineer, conductor, and other members of the crew were killed. In seeking a recovery for the death of the engineer, it was sought to be

shown that the conductor was negligent in failing to stop the train. A recovery was denied, but solely upon the ground that the evidence would not warrant an inference that the conductor had failed to perform his duty, the court holding that on the contrary it was more reasonable to infer from the circumstances shown by the evidence that the conductor and other crew members had protested against the action of the engineer, and that "the jury could not reasonably have drawn any other inference than that the other employees were not in any degree responsible for the accident." It may be inferred that the ruling would have been otherwise had the evidence shown a neglect of duty by the conductor.

We find one case directly in point, in which the facts were almost identical with those in the present case. In Louisville & N. R. Co. v. Heinig's admx, 162 Ky. 14 (171 S. W. 853), an engineer was killed in a head-on collision between his train and another when he failed to stop at a meeting point. Rules of the company were in force, in all respects similar to those in this case, requiring the engineer to blow a meeting signal, and upon his failure to do so, requiring the conductor to stop the train. The conductor was in charge of the train, as is alleged in this case. No signal was blown by the engineer, and neither the engineer nor the conductor stopped the train. On the question of the alleged negligence of the conductor in failing to stop the train, the Court of Appeals of Kentucky said: "The next question concerns the conductor's failure to angle-cock the train, and the question whether or not, if he was negligent in this respect, defendant is liable. In the recent case of Pennsylvania Co. v. Cole, 214 Fed. 948 [131 C. C. A. 244], the plaintiff was a rear brakeman and flagman on defendant's east-bound freight train. While his train was standing, about midnight, on the main track to take water, it was run into from the rear by another train, consisting of an engine and caboose. The caboose in which plaintiff was asleep was set on fire, and plaintiff thereby severely injured. It was plaintiff's duty to flag the following train, and instead of doing so he went to sleep in his own caboose. A recovery was allowed on the ground that the evidence showed that those in charge of the following train could, by the exercise of reasonable care, have discovered the presence of the forward train in time to avoid the collision. In discussing the question the Circuit Court of Appeals, speaking through

Judge Knappen, said: 'But it is strongly pressed upon us that plaintiff's negligence in going to sleep in the caboose while on duty, and thus in failing to flag the following train, was negligence so gross and so proximate in its effect as to preclude all right of recovery. The danger to the interest of the traveling public from failure to enforce such rule is strongly urged. There can be no doubt, at the common law, such would have been the effect of plaintiff's alleged negligence; but the Employers' Liability Act expressly abrogates the common-law rule, under which action was barred by the negligence of the plaintiff proximately contributing to the accident, and substitutes therefor the rule of comparative negligence. Under this act no degree of negligence on the part of the plaintiff, however gross or proximate, can, as a matter of law, bar recovery; for, as said in Norfolk & W. Ry. Co. v. Earnest, 229 U. S. 114, 122, 33 Sup. Ct. 654, 657 (57 L. ed. 1096, Ann. Cas. 1914C, 172), the direction that the diminution shall be in proportion to the amount of negligence attributable to such employee means that: "Where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages but only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both."'

"In the case of Grand Trunk W. R. Co. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. ed. 838, Ann. Cas. 1914C, 168, the United States Supreme Court, speaking through Mr. Chief Justice White, quoted with approval the following language of the Circuit Court of Appeals for the Seventh Circuit: 'If, under the Employers' Liability Act, plaintiff's negligence, contributing with defendant's negligence to the production of the injury, does not defeat the cause of action, but only lessens the damages, and if the cause of action is established by showing that the injury resulted "in whole or in part" from defendant's negligence, the statute would be nullified by calling plaintiff's act the proximate cause, and then defeating him, when he could not be defeated by calling his act contributory negligence. For his act was the same act, by whatever name it be called. It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act.' Grand Trunk Western Ry. Co. v. Lindsay, 201 Fed. 844 [120 C. C. A. 174].

"In view of the above decisions, it cannot be said that the decedent's negligence, even though the proximate cause of his death, was the sole cause of his death, if, as a matter of fact, the conductor, notwithstanding decedent's negligence, could, in the exercise of ordinary care, have known that decedent had failed to give the meeting-point whistle, or had failed to take steps to stop his train, and have stopped the train in time to avoid the collision. Rule 90, above set forth, imposes on the conductor the duty of placing himself in a position to hear the meeting-point signals, and, failing to clearly hear and understand them, to stop his train. All the witnesses agree that it was the conductor's duty, when the decedent failed to give the meeting-point signal, and failed to slacken the speed of his train, to apply the angle-cock and stop the train. We are not disposed to take the narrow view that the rule in question was adopted solely for the protection of the passengers, or solely for the protection of employees who were not themselves negligent. It was intended for the protection of the train and everybody on it. It imposes a duty the breach of which is negligence, and an employee's contributory negligence does not, under the Federal Employers' Liability Act, deprive him of the benefit of the rule, where its violation would be negligence as to any one else on the train. Notwithstanding the fact that decedent's negligence created a condition where the rules required the conductor to act, the accident might have been avoided if the conductor had, under the circumstances of the case, used ordinary care in the application of the angle-cock. The case is not different in principle from that of Pennsylvania Co. v. Cole, supra, and we therefore conclude that if, as a matter of fact, the conductor was negligent in failing to stop the train, plaintiff may recover notwithstanding his contributory negligence."

We recognize that this last decision, which is from a State court, is not binding authority and must yield to any contrary ruling of the Federal courts. However, we think the quoted reasoning of the court sound and not in conflict with the adjudications of the Federal courts. The majority of the decisions cited by the movant are cases where an employee failed to perform a duty or violated specific orders, which caused his injury or death, and the alleged negligence of the railroad was a failure of other employees, usually occupying a subordinate relationship, to give a warning to such

employee, which warning might or might not have avoided the accident. All the cases cited recognize that an employee is barred from recovery only when it is shown that the sole and proximate cause of the accident was the employee's own negligence; and in none of those cases was there a failure by a superior to perform a positive duty, which if performed would have prevented the accident.

The Court of Appeals rightly differentiated between the alleged negligence of the conductor in failing to warn the engineer of facts already within his knowledge, which warning, if given, may or may not have prevented the accident, and the negligence of the conductor in failing to perform a positive duty enjoined upon him, which, if performed, unquestionably would have averted the accident. If, notwithstanding the employee's negligence, the accident would have been avoided but for the negligence of the railroad company, the latter's negligence is such as proximately contributes to the accident, and brings the case squarely within the comparative-negligence rule.

In this case the duty of stopping the train devolved upon the conductor immediately on the engineer's failure to give the signal. The engineer was under a duty to stop the train only in the event it was determined on approaching the meeting-point that the other train had not taken the siding. Under the state of facts alleged, we think that it makes no difference as to which negligent act was the closer to the collision in point of time. The negligence of both parties flowed toward, and tended to create, the ultimate result. If it might be said that the railroad's negligence was the more remote and the negligence of the engineer was intervening, still the negligence of the railroad was such that it could reasonably have been anticipated and apprehended that it would result in the collision; and that negligence can not be disregarded. As stated in the Hadley case, supra, "We must look at the situation as a practical unit rather than inquire into a purely logical priority."

The allegations of the petition make a case of contributory negligence on the part of both the engineer and the conductor, the latter's negligence being the negligence of the railroad company. We do not think that it can be held as a matter of law that the negligence of the engineer was the sole and proximate cause of his death.

812

■ Exception is taken to the ruling by the Court of Appeals that the trial court properly overruled the special demurrers to the allegations of the petition charging the engineer of train No. 57 with negligence and a failure to exercise ordinary diligence in operating his train at an excessive rate of speed in approaching the meeting-point, and in failing to keep a proper lookout and to see train No. 12 in time to bring his train to a stop and avoid the collision. There is no merit in this exception.. See, in this connection, *Newman* v. *Southern Railway Co.,* 57 *Ga. App.* 70 (194 S. E. 237) ; *Southern Ry. Co.* v. *Newman,* 187 *Ga.* 132 (199 S. E. 753) ; Rocco *v.* Lehigh Valley R. Co., 288 U. S. 275 (53 Sup. Ct. 343, 77 L. ed. 743).

■ We have given consideration to the exceptions of the petitioner in case No. 15433, and find no merit in them.

*Judgments affirmed. All the Justices concur, except Duckworth, J., who dissents.*